UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH COHEN, II,

    *Plaintiff*,

*v.*                                                        CASE NO. 12-CV-13029

COMMISSIONER OF                  DISTRICT JUDGE PATRICK J. DUGGAN
SOCIAL SECURITY,                    MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II. REPORT

#### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 12.)

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Plaintiff Joseph Cohen, II, was 26 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 28.) Plaintiff's employment history includes work as a general laborer for less than one month. (Tr. at 109.) Plaintiff filed the instant claim on August 14, 2008, alleging that he became unable to work on January 1, 1994. (Tr. at 82.) The claim was denied at the initial administrative stages. (Tr. at 43.) In denying Plaintiff's claims, the Commissioner considered paranoid schizophrenia and other psychotic disorders as possible bases for disability. (*Id.*) On April 16, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Henry Perez, Jr., who considered the application for benefits *de novo*. (Tr. at 11-42.) In a decision dated September 24, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 21.) Plaintiff requested a review of this decision on November 15, 2010. (Tr. at 9-10.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 14, 2012, when, after review of additional exhibits[2] (Tr. at 170-73, 273-304), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On July 10, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

*See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

Judicial review of the ALJ's decision is direct, "but we play an 'extremely limited' role." *Simila v. Astrue,* 573 F.3d 503, 513-14 (7th Cir. 2009). "We do not actually review whether [the claimant] is disabled, but whether the Secretary's finding of not disabled is supported by substantial evidence." *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir. 1993). Just as "'[n]o trial is perfect,'. . . no administrative hearing or opinion is either[;] thus, in analyzing an ALJ's decision, a reviewing court is to look for 'fatal gaps or contradictions' and not 'nitpick' in search of essentially meaningless missteps." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1965 (N.D. Ill. 2011).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since July 31, 2008, the application date. (Tr. at 16.) At step two, the ALJ found that Plaintiff's psychosis NOS/paranoid schizophrenia and history of learning disorder were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 16-17.) At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. at 19.) The ALJ also found that Plaintiff was a younger individual on the date the application was filed, i.e., between the ages of 18 and 49. (*Id.*) At step five, the ALJ found that Plaintiff could perform "a full range of work at all exertional levels but with the following nonexertional limitations: Claimant is capable of simple job assignments; routine production or stress; occasional contact with supervisors; and simple 1 to 2 step instructions." (Tr. at 19-19.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 21.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was taken by the police to the emergency room on August 16, 2008, "because of bizarre behavior, paranoid thoughts, hearing voices, rambling and incoherent and illogical behavior." (Tr. at 174.) Plaintiff was diagnosed with psychosis NOS and schizoaffective disorder, bipolar type, and was assessed a GAF score of 60. (Tr. at 175.) After several days, Plaintiff was given prescription medications and was discharged home. (*Id.*) It was noted that Plaintiff "has a history of using alcohol and drugs." (Tr. at 181.) Therefore, he was also "referred to the alcohol and drug rehab program." (Tr. at 182.)

Plaintiff sought treatment with Lincoln Behavioral Services from August 2008 through March 2010. (Tr. at 200-09, 253-60, 263-70.) Throughout this time, it was noted that Plaintiff was doing "fine" and "pretty good." (Tr. at 255-60.) On December 1, 2009, it was noted that "[e]verything is good" and that Plaintiff had "no complaints." (Tr. at 254.) On January 8, 2010, it was noted that "[e]verything is good" and that his "[d]epression and anxiety is under control." (Tr. at 253.) There were no reported side effects of medication. (*Id.*) On March 2, 2010, it was noted that Plaintiff was doing "pretty good[,]" that his "[d]epression and anxiety [were] under control[,]" and that he had no reported side effects from the medication. (Tr. at 263.)

A Mental Residual Functional Capacity ("RFC") Assessment was completed on February 5, 2009, by Zahra Khademian, M.D. (Tr. at 229-32.) The assessment concluded that Plaintiff was moderately limited in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods, but was otherwise not significantly limited in understanding, memory, or sustained concentration and persistence. (Tr. at 229-30.) The assessment also concluded that Plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, but was otherwise not significantly limited in social interaction or adaptation. (Tr. at 230.) The assessment concluded that Plaintiff

7

"has retained the ability to do simple unskilled tasks in a regular basis at this point." (Tr. at 231.)

A Psychiatric Review Technique was completed by Dr. Khademian on the same date, which diagnosed psychosis NOS/paranoid schizophrenia, improved, and polysubstance abuse and dependence. (Tr. at 235, 241.) Plaintiff was found to be moderately limited in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace, and it was noted that he experienced one (or two) episodes of decompensation of extended duration. (Tr. at 243.)

The social security employee helping Plaintiff fill out his application noted that

> [t]his claimant could not tell me anything about his conditions. All he kept saying was "How am I supposed to know what my conditions are, I can't think straight." He said that he has never gotten treatment for any conditions.

(Tr. at 105.) When asked about his illnesses or conditions that limit his ability to work, the social security employee indicated Plaintiff responded that

> [h]e cannot think straight. (He could give me nothing else). He thinks he has a hereditary condition that causes him not to be able to think straight or hold a job. He thinks that he should have been in special education classes in school, but he was not. The school "was not very good." He tried to work before but always gets fired.

(Tr. at 108.)

Plaintiff's daily function report, which was completed by a third party, indicates that Plaintiff "has been violent on several occasions" and that he "is often in trouble with the law[,]" including driving on a suspended license. (Tr. at 133, 137.)

At the administrative hearing, when asked why Plaintiff feels that he can't work, Plaintiff responded, "Because I'm - - because I'm on so much medication" that "makes me drowsy." (Tr. at 29.) Plaintiff also stated, "sometimes when I'm around people I have a problem interacting with them sometimes and sometimes I just like go blank and I'm unable to respond." (Tr. at 29.) When asked whether he ever gets in fights with people, Plaintiff responded "Yeah." (*Id.*) Plaintiff also stated that he has mood swings between "[h]igh, sometimes lows and like depression." (*Id.*) Plaintiff added that when he is depressed, "[I] [d]on't want to get out of bed, don't want to speak

8

to anyone, don't want to go anywhere, don't find interest in anything at all." (Tr. at 29-30.) He further testified that for about "half the time" each month he does not want to get out of bed at all. (Tr. at 30.) Plaintiff stated that he has crying spells a "[c]ouple times maybe a month" and that they last "until I can get to someone or until someone gets to me and can, you know, maybe try calming me down and start talking to me about, you know, what's going on and what's important." (*Id.*) Plaintiff indicated that he has thoughts of hurting himself "whenever I get depressed" and that he sees or hears things that end up not being there and that "sometimes that can happen daily." (Tr. at 30-31.) Plaintiff stated, "I could be sitting here like right now and it was - - it could seem like I seen almost like a shadow or something and if I look, it, it won't be there anymore." (Tr. at 31.)

  Plaintiff indicated that he has some short term memory difficulties in remembering things like "[t]elephone numbers, people's names, birthdays" and that he uses reminder notes to help him. (*Id.*) Plaintiff also stated that he can only concentrate for "[m]aybe 10, 15 minutes" and that he takes "maybe two naps a day" for "[t]wo, three hours" each. (Tr. at 32.) Plaintiff added that he is depressed "about every four, four days out of the week, four." (*Id.*) Plaintiff explained that during the high periods he is hyper and finds himself "blurting out just different stuff that, you know, people would, you know, maybe not understand or just yelling out different stuff." (Tr. at 33.) Plaintiff also stated that the "neighborhood I live in is kind of - - is not too good . . . sometimes, yeah, I will kind of panic sometimes. Especially when I'm around a lot of people that I don't know about . . . ." (*Id.*)

  Plaintiff stated that he lives with his grandmother and that he does help around the house by doing dishes and cleaning the bathroom. (Tr. at 34.) When asked whether he has any problems doing these things around the house, Plaintiff responded, "[j]ust lack of concentration and it's like I get bored doing the same thing for a - - for so long. You know, I'll just start going into something else and just start doing something else," so he ends up not finishing things or the things he finishes are not done correctly so he'll have to go back and fix things. (*Id.*)

  Plaintiff stated that he does not have any problems shopping but does not currently shop because he cannot afford to do so. (Tr. at 34-35.) Plaintiff testified that he does not currently use

9

drugs or alcohol but that he had used substances "[s]ometime - - maybe some years ago." (Tr. at 35.) When asked whether his medications help him, Plaintiff responded, "they make me tired and they sometimes, I guess, they sometimes mellow me out and I don't - - I'm not sure." (*Id.*) When his attorney asked whether he still has the symptoms he discussed during the time he takes the medications, Plaintiff responded, "Yeah." (*Id.*) Plaintiff stated that he still uses public transportation "sometimes" and still plays basketball "sometimes." (Tr. at 35-36.)

Plaintiff indicated that he has not been hospitalized since the one time in 2008, that he still treats with Lincoln Behavioral Services once a month and that he is compliant with taking his medications. (Tr. at 36.) Plaintiff stated that he "can't stand for that long . . . I can't. I mean, it's just - - I can't do it. I don't know why. I've tried." (*Id.*) When asked how long he could sit, Plaintiff responded, "[m]aybe 20 minutes, maybe," and when asked why he can't sit any longer, Plaintiff responded, "[b]ecause I always - - it's like I always want to do something and, and just get up and go somewhere." (Tr. at 36-37.) When asked how far he can walk, Plaintiff responded, "[m]aybe a mile, maybe more than a mile." (Tr. at 37.) As to lifting, Plaintiff stated that he "can probably lift 100 pounds but I don't know how long I could, you know, lift it[,]" (*Id.*) When asked how many pounds he could lift around three or four times an hour, Plaintiff responded, 30, 40 pounds." (*Id.*) Plaintiff finished high school and took a few semesters at a community college. (Tr. at 38.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> has no exertional limitations of lifting established and we're looking at jobs that would provide for routine production and stress, simple job assignments, occasional contact with supervision, jobs that he could readily perform through simple one-two step instructions putting this individual at the unskilled level.

(Tr. at 38-39.) The VE responded that such a person could perform the 40,000 janitorial jobs and the 3,750 hotel and office cleaning jobs (after the visitors or workers have left the rooms or offices) available in Southeastern Michigan. (Tr. at 39.) The ALJ asked, "If I find Claimant's testimony to be credible and the exertional impairments described are supported by the medical

evidence, is there a significant number of jobs existing in the local and state economy?" and the VE indicated that there would be. (Tr. at 39-40.) However, if the Plaintiff's testimony as to non-exertional limitations were viewed as fully credible, the VE indicated that there would not be a significant number of jobs available because Plaintiff indicated that, when depressed, he "stays in bed, he says about half of the month" and that such "absenteeism would not be tolerated in the workplace." (Tr. at 40.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ found that Plaintiff could perform "a full range of work at all exertional levels but with the following nonexertional limitations: Claimant is capable of simple job assignments; routine production or stress; occasional contact with supervisors; and simple 1 to 2-step instructions." (Tr. at 17.) After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the "ALJ erred in finding that Plaintiff had moderate limitations in concentration, persistence, and pace, but failing to include those limitations in his residual functional capacity assessment and hypothetical to the vocational expert." (Doc. 8 at 9-11.) This argument is "not uncommon and the case law resolves it both ways." *Hernandez v. Comm'r of Soc. Sec.*, No. 10-cv-14364, 2011 WL 4407225, at *9 (E.D. Mich. Aug. 30, 2011) (collecting cases). The *Hernandez* court stated that

11

> a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace . . . . However, the Court also finds that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of, for example, "unskilled work" but excludes a moderate limitation in concentration. Rather this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's hypothetical and RFC assessment.

*Id.* at *10 (citations omitted). Looking at the record as a whole, I suggest that the ALJ's findings are supported by substantial evidence.

In the instant case, the ALJ found that Plaintiff could perform simple job assignments; routine production or stress; occasional contact with supervisors; and simple 1 to 2-step instructions. (Tr. at 17.) I suggest that this level of capability is supported by substantial evidence of record. Although Plaintiff experienced a serious episode manifesting bizarre behavior, paranoid thoughts, and the hearing of voices in 2008, more recent evidence shows that Plaintiff has been "fine," "pretty good[,]" that he had "no complaints," and that his "[d]epression and anxiety is under control." (Tr. at 253-63.) In addition, it was consistently noted that Plaintiff reported no side effects of medication. (*Id.*) The ALJ's hypothetical included the limitations noted in the Mental RFC Assessment and the assessment itself concluded that Plaintiff "has retained the ability to do simple unskilled tasks in a regular basis at this point." (Tr. at 231.) The Psychiatric Review Technique noted that Plaintiff's mental impairments were " improved[.]" (Tr. at 235, 241.) There is no opinion of record to the contrary and I suggest that there is no evidence of disabling mental impairment.

I therefore suggest that the record as a whole provides substantial evidence supporting the ALJ's hypothetical and the RFC assessment limiting Plaintiff to simple job assignments with only 1 to 2-step instructions. *See Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (substantial evidence supported ALJ's decision where, although the psychiatrist found "moderate" limitations in the plaintiff's ability to maintain attention and concentration for extended periods, the psychiatrist noted the plaintiff's daily activities and concluded that the plaintiff was capable of performing simple tasks on a sustained basis); *Burnett v. Comm'r of Soc. Sec.*, No. 10-cv-14739, 2012 WL 3870362, at *7 (E.D. Mich. Sept. 6, 2012) (where physician finding moderate limitations

in concentration, persistence and pace also concluded that the plaintiff is able to perform unskilled work, ALJ's reliance on limitation to unskilled work was not improper); *Cummings v. Comm'r of Soc. Sec.*, No. 10-11621, 2011 WL 3958473 (E.D. Mich. Sept. 8, 2011) (ALJ's omission of concentration and pace limitations in the hypothetical was reasonable where doctor who concluded that the plaintiff had "serious concentration and attention difficulties" also found that his "ability to work may not be severely impaired as long as the job does not involve any appreciable amount of contact with people"); *Young v. Comm'r of Soc. Sec.*, No. 10-cv-11329, 2011 WL 2601014 (E.D. Mich. May 23, 2011) (although the plaintiff cited to moderate limitations noted in the assessment, the plaintiff failed to mention that the same assessment also concluded that the plaintiff was capable of unskilled work).

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
| Dated: May 23, 2013 | s/ Charles E. Binder<br>CHARLES E. BINDER<br>United States Magistrate Judge |

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  May 23, 2013                         By      s/Patricia T. Morris
                                                                Law Clerk to Magistrate Judge Binder